UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DELORES BUCHANAN SANDERS, as
Personal Representative on behalf of the
Estate of Robert Lee Sanders, and
DELORES BUCHANAN SANDERS,
individually,

        Plaintiff,                         Civil Action No. 13-CV-11046
vs.                                          HON. MARK A. GOLDSMITH

CHRYSLER GROUP, LLC UAW
PENSION PLAN,

        Defendant.
_____/

**OPINION AND ORDER (1) GRANTING DEFENDANT'S MOTION FOR JUDGMENT (Dkt. 19) AND (2) DENYING PLAINTIFF'S MOTION FOR JUDGMENT (Dkt. 28)**

### I.    INTRODUCTION

This is an employee-benefits case, in which Plaintiff seeks to recover surviving-spouse benefits allegedly due to her pursuant to her decedent husband's employer-sponsored plan. Plaintiff contends that in denying her claim for benefits, Defendant violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. The parties filed cross-motions for judgment (Dkts. 19, 28), and a hearing on the matter was held on November 6, 2014. For the reasons discussed fully below, the Court finds that Defendant's decision was not arbitrary or capricious. Therefore, the Court grants Defendant's motion for judgment (Dkt. 19) and denies Plaintiff's motion for judgment (Dkt. 28).

1

## II.     BACKGROUND

Robert Lee Sanders ("Robert") was an employee at Chrysler LLC and participated in the Chrysler LLC-UAW pension plan. Robert retired under the terms of that plan on May 31, 2007, with payments effective June 1, 2007. Administrative Record ("A.R.") at 50 (Dkt. 18).

In selecting his retirement plan, Robert elected to enroll in a surviving-spouse option. Id. at 50, 53. The surviving-spouse option afforded Robert the opportunity to reduce his monthly pension benefit in consideration for future monthly benefits payable to his designated beneficiary upon his death. Id. at 53. Robert's spouse at the time of his retirement was Rosemary Sanders, whom he elected to receive surviving-spouse benefits; she was listed as the beneficiary for such future benefits in the plan records. Id. at 50. Rosemary Sanders died in August of 2008. Id. at 6. Robert reported his wife's death to Benefit Express, a company that performs administrative functions on behalf of the plan, on September 8, 2008. Id. at 1. Robert was mailed forms to cancel his surviving-spouse coverage on September 11, 2008 and on December 24, 2008. Id. at 6. Benefit Express received Rosemary's death certificate on October 3, 2008. Id. at 4.

After Rosemary's death, Robert married Plaintiff Delores Sanders on September 13, 2009. Id. at 45. A little over a year later, on October 27, 2010, Robert passed away. Id. at 222. Plaintiff subsequently filed a claim for benefits as Robert's surviving spouse. Id. at 23-29.

Benefit Express rejected Plaintiff's claim because (i) Robert never cancelled his surviving-spouse coverage in favor of Rosemary after her death; and (ii) Robert never re-elected the surviving-spouse coverage, designating Plaintiff as the new beneficiary. Id. at 21-22. Plaintiff appealed the denial of benefits to the Board of Administration, id. at 18, and the Board denied Plaintiff's appeal for the same two reasons. Id. at 1-2. The parties agree that Robert's purported failure to cancel his existing surviving-spouse coverage upon Rosemary's death was

2

not a proper basis for denying Plaintiff spousal benefits. Def. Br. at 3-4 (Dkt. 19); Pl. Br. at 1-2, 3 (Dkt. 28).[1] Plaintiff then filed the present complaint in federal court.[2]

The pension plan at issue provides that "[t]he Board of Administration shall have discretionary authority to interpret the Plan and determine eligibility for and the amount of benefits in accordance with the terms of this Pension Plan. Any Board interpretation or Board determination shall be given full force and effect unless it can be shown that the interpretation or determination is arbitrary and capricious." A.R. at 281. Within the Board's power is the ability "[t]o carry out the rules and procedures set forth in this Pension Plan to be followed by employees, former employees and surviving spouses in filing applications for benefits," and "[t]o find facts and determine the rights of any employee, former employee or surviving spouse applying for retirement benefits." Id.

The plan further provides that any retiree "who marries or remarries, subsequent to the earliest date surviving spouse coverage was in effect . . . may elect, or re-elect, surviving spouse coverage." Id. at 244. The plan states that "[s]uch coverage shall become effective on the first day of the third month following the month in which the Board of Administration receives a completed election form, but in no event before the first day of the month following the month in which the retired employee has been married one year." Id. However, "[n]o election provided

---

[1] There was some confusion as to whether Robert completed the process to cancel the existing surviving-spouse option in favor of Rosemary. A.R. at 6 ("Mr. Sanders was mailed multiple letters regarding SSO but did not complete the process."). Evidently, Rosemary was also a Chrysler employee and her death certificate had been filed under her account instead of Robert's. Def. Br. at 3, n.5; A.R. at 63. The filing of the death certificate under her account should have been sufficient to cancel the surviving-spouse option from Robert's account; however, it appears that Robert's election was not cancelled. A.R. at 63. Ultimately, the election was removed retroactively and Robert's estate was to receive a refund for the retroactive cancellation. Id.

[2] Plaintiff filed a prior complaint alleging the same violations at issue here, but that complaint was dismissed without prejudice to allow Plaintiff to fulfill the exhaustion requirements under ERISA. See Compl. at 1 (Dkt. 1); see also Stipulated Order Dismissing Case (Dkt. 6), Sanders v. Chrysler Group, LLC – UAW Pension Plan, No. 12-cv-10093.

3

[t]hereunder shall become effective under any circumstances for any retired employee whose completed election form is received by the Board of Administration after the first day of the month in which the retired employee has been married one year," or 18 months if on or after October 1, 1999. Id.

### III. LEGAL STANDARD

Barring a procedural challenge to a decision denying benefits, the Court's review of an ERISA benefits action is limited to the evidentiary materials contained within the administrative record. Moore v. Lafayette Life Ins. Co., 458 F.3d 416, 430 (6th Cir. 2006). Any challenge to a denial of benefits "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Where the plan administrator is granted discretionary authority, an arbitrary and capricious standard of review applies. Perez v. Aetna Life Ins. Co., 150 F.3d 550, 555 (6th Cir. 1998) (en banc). The Sixth Circuit "has consistently required that a plan contain 'a clear grant of discretion [to the administrator] to determine benefits or interpret the plan.'" Id. (alteration in original) (quoting Wulf v. Quantum Chem. Corp., 26 F.3d 1368, 1373 (6th Cir. 1994)) (emphasis in original).

The parties agree that arbitrary and capricious review should apply. Def. Br. at 8-10; Pl. Br. at 5-6. Under the arbitrary and capricious standard, the Board's decision must be "upheld if it is 'rational in light of the plan's provisions.'" McClain v. Eaton Corp. Disability Plan, 740 F.3d 1059, 1064 (6th Cir. 2014) (quoting Marks v. Newcourt Credit Grp., Inc., 342 F.3d 444, 457 (6th Cir. 2003)). The administrator's decision must be the product of a reasoned and

4

deliberative process, and be supported by the evidence. Id. at 1064-1065; see also Killian v. Healthsource Provident Adm'rs, Inc., 152 F.3d 514, 520 (6th Cir. 1998).

## IV. ANALYSIS

### A. Claim for Spousal Benefits

Defendant submits that its decision denying Plaintiff surviving-spouse benefits was not arbitrary and capricious because Robert never elected Plaintiff as his beneficiary using the standard enrollment form. Defendant asserts that the plan expressly requires that a form electing the surviving-spouse option be received by the Board for the coverage to run. Def. Br. at 11. Because there is no evidence in the record that Robert either completed a form, or that the Board received such a form, Defendant reasons that the Board properly denied Plaintiff the spousal benefits. Id. at 11-12.

Defendant also points to the "plan documents rule" in support of the Board's decision. According to Defendant, "the plan documents rule allows pension plans to rely on forms issued by pension plans exclusively, without the need to look outside of plan issued forms to determine a participant's intent, and requires participants to use plan issued forms." Id. at 12. Because Robert did not elect surviving-spouse coverage using the plan-issued form, Defendant argues the plan-documents rule permits the Board to reject Plaintiff's application for benefits, making the Board's decision a reasonable one.

Plaintiff argues that the Board's decision denying Plaintiff benefits was arbitrary and capricious because the Board interpreted ambiguous provisions of the pension plan against a plan beneficiary, contrary to the remedial nature of ERISA and the standard rules of contract interpretation. Plaintiff concedes that no completed form was received by the Board. Pl. Br. at 3. However, because Robert elected to participate in the surviving-spouse option for his

5

previous wife, Rosemary, Plaintiff argues that Robert would have elected to participate in the surviving-spouse option again, in favor of his new wife, Plaintiff. Id. Plaintiff notes that Robert attempted to remove his former wife as beneficiary shortly after her death, and that both Benefit Express and the Board erred in citing Robert's failure to cancel his existing coverage in favor of Rosemary as a reason for denying Plaintiff's claim. Id. Plaintiff further asserts that the "error is more important than it seems as the plan did not allow Robert to change beneficiaries without proving the death of the prior spouse." Id. at 3-4. Furthermore, Plaintiff argues that the plan grants Robert an 18-month window of time in which to finalize his election, but that Robert died before he was able to do so. Id. at 4.

Plaintiff claims that because the plan does not have an express provision for the circumstances presented here — where a participant dies while the window for making elections is open, but before the participant actually made the election — the plan is ambiguous. Id. at 4-5. While Plaintiff agrees that arbitrary and capricious review applies, she asserts that the deferential standard is tempered by the general principle that ambiguous contractual provisions are construed against the drafting parties. Id. at 5-6. Plaintiff specifically argues that (i) ERISA, being a remedial statute, requires reading any ambiguities liberally and in favor of beneficiaries, id. at 2-3; and (ii) the reading offered by Defendant would render the provision's time limit nugatory, making the provision an illusory promise, id. at 4-5.

In its reply to Plaintiff's motion for judgment, Defendant argues that Plaintiff's reliance on Benefit Express's and the Board's error when denying Plaintiff benefits is overstated. Def. Reply at 1-2 (Dkt. 30). What is important, Defendant argues, is that Robert never elected Plaintiff as a beneficiary for the surviving-spouse option, and that both decisions denying Plaintiff benefits explicitly referenced Robert's failure to do so. Id. Defendant also dismisses

6

Robert's efforts to remove his former spouse as his beneficiary as evidence that he intended to elect surviving-spouse coverage in favor of Plaintiff, as Robert had not yet re-married at that time. Id. at 2. Defendant also challenges Plaintiff's characterization of the plan as ambiguous. Defendant contends that a retiree's failure to elect coverage for a new spouse before one's death during the 18-month period does not render the provision itself ambiguous. Id. at 3-4.

The Court first observes that the plan language recited by the parties is not ambiguous. Indeed, it appears that Plaintiff is not actually arguing that the language of the plan itself is ambiguous, i.e. that the language is susceptible to multiple and conflicting interpretations that would lead to different outcomes. Rather, Plaintiff's point is that the plan fails to provide a specialized procedure for when a retiree dies during the window in which he was entitled to make an election without having done so. See Pl. Br. at 4 ("The pension plan is silent on how to handle such situations."). Thus, the cases on which Plaintiff relies in support of the proposition that arbitrary and capricious review is tempered when confronted by ambiguous plan language are not precisely on point. Those cases reviewed a plan administrator's interpretation of specific language in the plan, and then proceeded to construe such language against the drafter and in favor of the beneficiary. See Univ. Hosps. of Cleveland v. Emerson Elec. Co., 202 F.3d 839, 848-849 (6th Cir. 2000) (interpreting the term "three months"); Regents of Univ. of Mich. v. Emps. of Agency Rent-A-Car Hosp. Ass'n, 122 F.3d 336, 339-340 (6th Cir. 1997) (interpreting the meaning of "available").

In fact, the terms of the plan spell out precisely what a retiree must do to elect coverage and, given those terms, the Board's decision to deny Plaintiff benefits is reasonable, and therefore not arbitrary or capricious. First, the plain language of the plan states that any coverage under the surviving-spouse option "become[s] effective on the first day of the third month

7

following the month in which the Board of Administration receives a completed election form." A.R. at 244. As conceded by both parties, no such form was received by the Board. As noted by Defendant, a completed enrollment form is important, because it allows a participant to clearly communicate his intentions to the plan administrator, subsequently allowing the administrator to distribute benefits without having to look outside the plan materials to discern a participant's intent. Furthermore, the plan-documents rule permits ERISA administrators to adhere to the letter of the plan documents, even in the face of other, contradictory evidence. See Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan, 555 U.S. 285, 299-304 (2009). Absent the enrollment form, it would be difficult for a plan administrator to determine whether a participant intended to reduce the participant's own monthly pension benefit in order to confer a surviving-spouse benefit on the new spouse.

Here, the record contains no evidence that Robert would have wanted to enroll in the surviving-spouse option in favor of Plaintiff. There is no indication in the record that Robert attempted to elect surviving-spouse coverage for his new wife or that, in doing so, he encountered difficulties because of the clerical error with regard to his deceased wife. Plaintiff's arguments that Robert intended to elect surviving-spouse coverage for Plaintiff because he had elected the same option for his previous wife, and because he took the time to remove the pre-existing coverage following his previous wife's death (a required step before he would have been able to begin the re-election process) are not persuasive. As Defendant points out, Robert's revocation of his first election does not evidence any intent to provide coverage for his new wife, especially since it occurred prior to his subsequent marriage.

Furthermore, there could have been any number of reasons Robert would have chosen not to elect surviving-spouse coverage in favor of his new wife. For example, Plaintiff may have

had sufficient assets of her own, such that it would have made sense for Robert to enjoy a higher pension benefit during his lifetime, rather than accept a lower benefit to protect Plaintiff after his death. Distributing surviving-spouse benefits to Plaintiff might well be contrary to Robert's wishes and may violate the plan administrator's fiduciary duty. Indeed, the purpose of the plan-documents rule is to enable a plan administrator to distribute benefits without having to speculate as to what might have been a deceased's intentions.

Second, an enrollment form is also important because it triggers the timeline by which the surviving-spouse coverage becomes effective. Without a completed election form, the plan administrator would be unable to determine when the coverage became effective. The effective date is important because for participants who are married at the time of their retirement — and for those who marry or remarry after retirement — the participant's death must occur on or after the effective date of election for the surviving spouse to receive his or her benefits. A.R. at 243-244. Absent an enrollment form, the plan administrator has no way of knowing whether Robert died on or after the effective date of election.

Finally, the Court finds that Plaintiff's remaining arguments also lack merit. That the pension plan granted participants a window of time in which to make an election does not also suggest that such an election could be made posthumously. This would be inconsistent with the plan-documents rule and would require plan administrators to speculate as to how the plan participant would have wanted the benefits distributed. The allotted time limit is also not rendered nugatory simply because the participant's death may prevent the participant from making an election he would have otherwise been entitled to make. Nor is the promise to pay surviving-spouse benefits an illusory one: Had Robert re-elected the surviving-spouse option in

9

favor of Plaintiff, the plan administrator would have been obligated to distribute the surviving-spouse benefits in accordance with Robert's election.

Ultimately, Plaintiff appears to be asking the Court to read into the plan an additional procedure or process to accommodate the circumstances presented by Robert's death. However, "[t]he courts are not at liberty to rewrite the terms of an ERISA plan," Henglein v. Colt Indus. Operating Corp., 260 F.3d 201, 215 (3d Cir. 2001), and the Court declines to do so here. Accordingly, the Court finds that the Board's decision denying Plaintiff surviving-spouse benefits was not arbitrary or capricious.

### B. The Estate's Claim

Defendant argues that Plaintiff's claims, as personal representative of Robert's estate, should be dismissed because the estate failed to exhaust its administrative remedies before proceeding to federal court, as ERISA requires. Def. Br. at 13. Defendant asserts that the estate has not yet even submitted a claim for benefits to the Board of Administration. Id. Plaintiff has provided no response to this argument.

It is unclear what interest the estate has in this case; both parties agreed at oral argument that the estate would not be entitled to seek surviving-spouse benefits. The complaint also does not appear to be seeking any additional benefits or reimbursements from the plan to which the estate would be entitled. In any event, the Sixth Circuit has held that "'[t]he administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court.'" Coomer v. Bethesda Hosp., Inc., 370 F.3d 499, 504 (6th Cir. 2004) (alteration in original) (quoting Miller v. Metro. Life Ins. Co., 925 F.2d 979, 986 (6th Cir. 1991)). Defendant claims that the estate has not exhausted administrative remedies and there has

10

been no argument or evidence otherwise from Plaintiff. Accordingly, the Court dismisses Plaintiff's claims on behalf of the estate in this action for failure to exhaust.

## V.   CONCLUSION

For the aforementioned reasons, the Court grants Defendant's motion for judgment (Dkt. 19), and denies Plaintiff's motion for judgment (Dkt. 28).

SO ORDERED.

Dated: January 26, 2015                    s/Mark A. Goldsmith
       Detroit, Michigan                   MARK A. GOLDSMITH
                                           United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 26, 2015.

                                           s/Johnetta M. Curry-Williams
                                           Case Manager